UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> HENRY B. SARGENT, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 19-CV-11416 (WGY) <br> ) <br> ) <br> ) <br> ) <br> ) |

### PRE-TRIAL MEMORANDUM OF LAW REGARDING THE EQUITABLE REMEDY OF DISGORGEMENT IN THE POST-*LIU* ERA

Defendant Henry Sargent respectfully submits this memorandum in advance of a bench trial scheduled for February 7, 2022, adjudicating the request of the Securities and Exchange Commission ("SEC") for an order of disgorgement. The United States Supreme Court, in *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020), analyzed and limited the scope of an appropriate disgorgement order and, in doing so, limited the Government's authority. The Supreme Court held that disgorgement could not exceed the defendant's net profits resulting from the actions at issue, nor could the amount disgorged exceed the amount of actual damages that identified victims suffered from a defendant's actions. *Id.* at 1948. As such, disgorgement is an appropriate equitable remedy only when the requesting party satisfies two prerequisites: (1) the disgorgement is limited to obtaining ill-gotten gains net legitimate expenses and (2) the disgorged funds can be returned to identifiable victims of the activities that resulted in the ill-gotten gains. An order that exceeds those limits becomes a penalty, which sounds in law and not in equity and cannot be adjudicated in the absence of a jury.

The SEC, despite multiple pleadings and years of litigation, has failed to identify any shareholders who traded in the public market (other than those whom the United States prosecuted in *United States v. Reynolds, et al.,* Criminal Action No. 18-10154 (DPW) (the "Criminal Action"). Indeed, the United States' theory, as articulated throughout the Criminal Action, is that Francis M. Reynolds's co-defendants, M. Jay Herod and Kenneth A. Stromsland, acting at Reynolds' direction, dominated the public market post – merger on October 30, 2016, and manipulated trades designed to drive the price of the stock upwards for eventual activity in the market.[1]

The SEC has produced no evidence that members of the public lost money from trading. It is telling that, in the Government's Sentencing Memorandum filed in advance of Reynolds' sentencing, there was no claim that any shareholder in the public market was a victim of Reynolds' or his co-defendants' activities, nor did the Government argue that the Sentencing Guidelines calculation of loss should include the loss by shareholders who publicly traded the stock (*see* Government's Sentencing Memorandum attached hereto as Exhibit 1) (ECF 254).  The SEC certainly has made effort to identify any losses by any victims as a result of Mr. Sargent's actions. Indeed, the SEC in its disclosures has not identified any witness who could even attempt to make such a showing and is now precluded from calling any such witness at trial.

The SEC has produced no evidence in discovery identifying any actual victims or any evidence even to support a claim that there were any victims who traded in the public market.  The SEC cannot now attempt to make such a showing, being limited to pre-trial disclosures and discovery productions.  Further, the SEC is estopped from altering the Government's argument in the Criminal Action that the criminal defendants dominated the market and bought and sold

---

[1] There is no allegation that Mr. Sargent had any role or knew about such market manipulation.  It is not accidental that Mr. Sargent's name seemingly was not mentioned a single time during the Criminal Action, quite simply because he had no involvement with Reynolds or his co-conspirators.

seemingly all of the marketable shares during the limited period of investing in order to drive up the price of the shares ("After the company's shares started trading in the stock market, Reynolds worked with his two co-defendants, Ken Stromsland and Jay Herod, to manipulate the price of those shares," Government October 9, 2019 Opening Statement at page 12 attached hereto as Exhibit 2) (ECF 200); (Reynolds held 48 million (presumably restricted) shares of PixarBio Stock, Defendant October 25, 2019 Closing Argument, summarizing Government's proof, attached hereto as Exhibit 3, page 57, in addition to controlling over 1.3 million free-trading shares and then "buying and selling his own shares" in order to "push the price up," Government's October 25, 2019 Closing Argument, Exhibit 3 at 24) (ECF 324).

As such, the SEC cannot prove that there is proximate causation between the alleged violation of securities laws by Mr. Sargent and any losses suffered by investors. Without any investors who might benefit from an order of disgorgement, the request for this remedy is based on an outdated standard and cannot be granted.

## ARGUMENT

In *Liu*, the Supreme Court held that, pursuant to 15 U.S.C. § 78u(d)(5), the SEC has no authority or right to seek, and by extension a court has no authority to order, disgorgement in an amount exceeding a defendant's net profits (after deducting legitimate expenses) from the underlying activity and, further, must sustain the burden of proving that any such award is appropriate, necessary and designed "for the benefit of investors" and does not otherwise exceed the fair compensation owed and to be paid to victims. *Liu*, 140 S. Ct. at 1947. Under the *Liu* framework, a disgorgement must be tailored to three measures: (1) the actual harm to investors caused by the misappropriation; (2) the actual benefit defendant received at their expense; and (3) the amount needed to make things whole again. *See generally Liu* at 1949 (explaining that

disgorgement is restorative in scope). As such, the award must be used to provide restitution to the victims of unlawful activity who are entitled to the equitable relief. *See id.* at 1946. In sum, the *Liu* Court, and the application of *Liu* by courts, clearly underscores that the equitable remedy of disgorgement is only appropriate for the limited purpose of restoring actual harm suffered by investors.[2]

### I. DISGORGEMENT MUST BE DENIED WHERE NO VICTIM-INVESTORS EXIST.

Under the analysis set forth in *Liu*, the SEC has the burden to show that an actual market participant—*i.e.*, someone other than Reynolds' co-defendants—was a counterparty to Mr. Sargent's trades, so that there exists an actual investor-victim. It cannot do so. According to the Government's theory of the case, Reynolds and his co-defendants wholly dominated the market. The SEC has produced no evidence to support a showing that public investors bought or sold any shares or were the victims of Mr. Sargent's actions. Mr. Sargent's shares were likely purchased by Reynolds' co-defendants in furtherance of the violative scheme, rather than by members of the public. Furthermore, the SEC has not identified a witness who could make the requisite showing at the upcoming trial and now is precluded from supplementing its witness list.

---

[2] On January 1, 2021, Congress passed Section 6501 of the National Defense Authorization Act (NDAA), which contains amendments to Section 21(d) of the Securities Exchange Act of 1934 (the "Exchange Act"). To the extent that the SEC argues that the recent legislative amendments affect the scope of *Liu*, this argument fails. Following *Liu*, there was confusion regarding whether disgorgement was a remedy that was available to the SEC in any situation. To clarify that the SEC could seek disgorgement, these amendments explicitly empowered the SEC to seek "disgorgement . . . of any unjust enrichment by the person who received such unjust enrichment" in civil actions," NDAA § 6501(a)(1)(B), and gave federal courts the express authority to order disgorgement "[i]n any action or proceeding brought by the Commission under any provision of the securities laws," NDAA § 6501(a)(3). These amendments simply clarify that disgorgement is available as an equitable remedy under the statute, in accordance with *Liu*. The amendments do not expand the disgorgement remedy beyond what the Supreme Court dictated in *Liu*, including the requirement that disgorgement must be for the benefit of investors and that only a defendant's profits adjusted by legitimate expenses could be awarded. Indeed, the traditional requirements of equity, analyzed in *Liu*, cannot be abrogated by statute, because equity, as originally practiced by the Chancery Courts of England and adopted in the United States, is derived from the judicial power, not the legislative power. Accordingly, the *Liu* Court's analysis of the traditional requirements for equitable disgorgement continues to govern, including following enactment of the NDAA. If the NDAA created a legislative disgorgement remedy broader than the one traditionally available in equity, that remedy would sound in law, not equity, and could not be applied without a jury finding.

Post-*Liu*, disgorgement must be denied when restitution to victims cannot be accomplished. *See Securities and Exchange Commission v. Genovese*, 2021 WL 3501421, at *14 (S.D.N.Y. Aug. 6, 2021) (declining to enter an order of disgorgement where a much larger restitution order was ordered in a parallel criminal case and "the SEC has failed to explain how a disgorgement award…is necessary or appropriate for the benefit of investors"). Here, the SEC cannot meet its burden, and thus should be denied the equitable remedy of disgorgement.

**II.     IF GRANTED, DISGORGEMENT CANNOT EXCEED NET PROFITS.**

In *Liu*, 140 S. Ct. 1936, the Supreme Court made clear that the SEC only has the limited authority to seek disgorgement in an amount "appropriate or necessary for the benefit of investors." Disgorgement amounts cannot, under any circumstances, exceed a defendant's "net profits" after deducting legitimate expenses.

In *Liu*, the Supreme Court held that awards of disgorgement in past cases had gone far beyond the traditional scope of equitable remedies by failing to limit disgorgement awards to the "defendant's net profits from wrongdoing," thereby "transforming [disgorgement] into a penalty outside [the Government's] equitable powers." *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 LEXIS 134261, at *20-21 (D. Ariz. July 29, 2020) (*quoting Liu* at 1944-47). The Court therefore explained the limits of trial courts' equitable power to grant disgorgement. First, disgorgement can equitably be imposed only when it is "appropriate or necessary for the benefit of investors." *Liu*, 140 S. Ct. at 1948-49; *see also id*. at 1943 (wrongdoer should not be punished "by pay[ing] more than a fair compensation to the person wronged"); 15 U.S.C. § 78u(d)(5) (permitting "equitable relief that may be appropriate or necessary for the benefit of investors"). Second, in keeping with long-standing equitable principles, the Supreme Court emphasized that disgorgement is purely a restorative remedy. To that end, the Supreme Court limited the amount

5

that a defendant can be ordered to disgorge to the "net profits" derived from the fraud. *See id.* at 1944-47. Accordingly, disgorgement awards exceeding a defendant's net profits derived from the wrongdoing are not authorized as a matter of equity, and are therefore not available pursuant to 15 U.S.C. § 78u(d)(5). *See Noland*, 2020 U.S. Dist. LEXIS 140159, at *11 ("the Court held that the SEC had gone too far in past cases, by failing to limit disgorgement awards to the 'defendant's net profits from wrongdoing' and thus 'transforming it into a penalty outside [the SEC's] equitable powers'") (*quoting Liu* at 1944-47). Gross profits must be reduced by legitimate business expenses such as research expenses, brokerage fees, and costs incurred related to the trading and other administrative tasks. *See Securities and Exchange Commission v. Navellier & Associates, Inc.*, 2021 WL 5072975, at *5-6 (D. Mass. Sept. 19, 2021). Thus, expenses, related business costs and taxes on any proceeds must be applied to reach a net expense calculation.

## CONCLUSION

In sum, because the SEC cannot make the requisite showing for a disgorgement order, its request for disgorgement must be denied. In the event disgorgement is ordered, the amount must reflect the net proceeds from Mr. Sargent's public trading of the stock at issue.

Dated: January 31, 2022                                       Respectfully submitted,

                                                              */s/ Peter R. Ginsberg*

                                                              Peter R. Ginsberg
                                                              Moskowitz and Book, LLP
                                                              345 Seventh Avenue
                                                              New York, NY 10001
                                                              *Attorneys for Defendant Henry B. Sargent*
                                                              (Admitted *Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I, Peter R. Ginsberg, certify that on January 31, 2022, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

                                                  /s/ Peter R. Ginsberg