UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 19-CV-11416 (WGY) |
| HENRY B. SARGENT, FREDERICK M. MINTZ, ALAN P. FRAADE, JOSEPH J. TOMASEK and PATRICK GIORDANO, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
DISGORGEMENT ON DEFENDANT'S SECTION 5 VIOLATION**

This Court has concluded that defendant violated Section 5 of the Securities Act of 1933 and has set a bench trial to determine the appropriate amount of disgorgement that defendant should pay as a consequence of that violation. The Commission submits this memorandum in advance of trial to set forth its position that defendant should pay $607,272 in disgorgement and $145,127 in prejudgment interest, for total disgorgement of $752,399.

### I. Procedural Background

After oral argument on January 13, 2022, the Court granted summary judgment for the Commission on its claim that Sargent violated Section 5. (Dkt 189.) The Court subsequently ordered a bench trial to commence on February 7, 2022, solely to determine the appropriate amount of disgorgement based on Sargent's violation of Section 5. (Dkt 196.)

The Commission did not move for summary judgment on its remaining claims, namely, that Sargent also violated the antifraud provisions of Section 17(a) of the Securities Act and

Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. The Court scheduled a three-week jury trial on those claims to begin in March 2022. (*Id.*) The Court has indicated that, after the trial on the antifraud claims, the Commission's other claims for relief will be decided, whether based on liability on Section 5, liability on the antifraud claims, or both, including any remaining disgorgement, civil penalty, penny stock bar, cancellation of certain stock still held by Sargent, injunctive relief, and any other relief the Court deems appropriate.

**II.      Defendant Should Be Ordered to Pay Disgorgement and Prejudgment Interest.**

   A.      <u>Applicable Law on Disgorgement</u>

In any action or proceeding brought by the Commission under any provision of the securities laws, any Federal court may grant any equitable relief that may be appropriate or necessary for the benefit of investors. 15 U.S.C. 78u(d)(5). The Exchange Act expressly authorizes the Commission to seek disgorgement. *Id.* §78u(d)(7). "The decision to order disgorgement of ill-gotten gains, and the calculation of those gains, lie within the discretion of the trial court, which 'must be given wide latitude in these matters.'" *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996) (quoting *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995)).

Disgorgement is a "profit-based measure of unjust enrichment" that is measured by the defendant's "wrongful gain," and is ordered to reflect the "foundational principle" of equity that "it would be inequitable that a wrongdoer should make a profit out of his own wrong." *Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020) (internal quotations omitted); *SEC v. Sargent*, 329 F.3d 34 (1st Cir. 2003) (disgorgement "is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws"); *SEC v. Williams*, 884 F. Supp. 28, 30 (D. Mass. 1995) (disgorgement is intended to deprive defendants of their "ill-gotten gains").

The amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation" and the "risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Happ*, 392 F.3d 12, 31 (1st Cir. 2004); *SEC v. Navellier & Assocs, Inc.*, No. 17-cv-11633, 2021 WL 5072975, *1-2 (D. Mass. Sept. 19, 2021) (applying this standard after *Liu*). "All doubts concerning the amount of disgorgement must be resolved against the violator." *SEC v. Sierra Brokerage Servs. Inc.*, 608 F. Supp. 2d 923, 968 (S.D. Ohio 2009), *aff'd*, 712 F.3d 321 (6th Cir. 2013); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989). And, once the SEC establishes that its proposed "disgorgement figure reasonably approximates the amount of unjust enrichment[,]" the burden of proof shifts to defendant to "clearly demonstrate that the disgorgement figure was not a reasonable approximation." *First City*, 890 F.2d at 1232.

B. Sargent Misconstrues *Liu*

Citing the Supreme Court's decision in *Liu*, Defendant suggested at the January 25 hearing (Dkt. 196) that the Court should limit disgorgement here because the Commission must identify individual victims and quantify their losses. Defendant misapprehends *Liu*.

Courts have repeatedly recognized that disgorgement is measured by defendant's profits, not investor losses, and these holdings remain valid. *See, e.g.*, *SEC v. Almagarby et al.*, 2021 WL 4461831, at *3 (S.D. Fl. Aug. 16, 2021) (rejecting post-*Liu* argument that there was no causation between dealer registration violation and investor losses and stating "disgorgement is measured by Defendant's profits and not investor losses") (citing *SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082, *23 (S.D. Fla Sept. 10, 2010) ("The disgorgement amount should be calculated by measuring illegal profits, not an amount needed to reimburse defrauded investors."))); *SEC v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017) (affirming disgorgement where "the district court

3

properly based the disgorgement upon Levin's gains and not the investors' losses"). As has long been the law, courts order wrongdoers to give up unjust enrichment "without the need to show that the claimant has suffered a loss." Restatement (Third) of Restitution and Unjust Enrichment § 1, cmt. a; *Magruder v. Drury*, 235 U.S. 106, 118-20 (1914) (trustee liable for profits gained in breach of fiduciary duty, and "[i]t makes no difference that the estate was not a loser in the transaction, or that the commission was no more than the services were reasonably worth").

*Liu* did not change this analysis. In fact, *Liu* affirmed the SEC's authority to seek, and courts' authority to order, disgorgement "that does not exceed a wrongdoer's net profits." *Liu*, 140 S. Ct. at 1940; *see also, e.g.*, *SEC v. Rinfret*, 2020 WL 6559411 at *5 (S.D.N.Y. Nov. 9, 2020). Thus, *Liu* confirmed the long-standing principle that disgorgement is measured by defendants' ill-gotten gains. *Liu*, 140 S. Ct. at 1942 ("Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity, even though that remedy may have gone by different names."); *id.* at 1943 (disgorgement is a "profit-based measure of unjust enrichment"). Indeed, *Liu*'s consideration of offsets for legitimate business expenses, 140 S. Ct at 1946, underscores that quantifying disgorgement focuses on the defendants' profits, not investor losses. If the focus were on quantifying losses, there would be no need to consider business expense offsets because they would not be relevant.

Thus, the Commission need not establish what loss was suffered by the victims of Sargent's violation. Because disgorgement is measured by a violator's "wrongful gains" as opposed to the victim's damages, *Liu*, 140 S. Ct. at 1944, disgorgement can be ordered in an amount that is different from, or even exceeds the victim's loss. *See Kansas v. Nebraska*, 574 U.S. 445, 463 (2015) (ordering disgorgement that exceeded the victim's "actual damages"); *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) ("[A] disgorgement order might be for an amount more or less than that required to make the victims whole.").

4

Finally, *Liu* did not require the Commission to identify harmed investors before the district court orders disgorgement, and doing so at this stage would be premature. 140 S. Ct. 16-17 & n.5 ("To the extent that feasibility is relevant at all to equitable principles, we observe that lower courts are well equipped to evaluate the feasibility of returning funds to victims of fraud.") As other courts have held, nothing in *Liu* requires the SEC to undertake the significant burden of identifying individual harmed investors or quantifying their losses before disgorgement is awarded. *SEC v. Blackburn*, 2020 WL 10787527, at *3 (E.D. La. Nov. 3, 2020) (*Liu* "did not create a rule requiring all disgorged funds be returned to investors or that a disgorgement award be limited to those funds that could be returned to investors."). And, in *Liu* itself, the Court stated it remained "an open question whether, and to what extent that practice [of depositing disgorgement funds with the Treasury where a distribution to investors is infeasible] nevertheless satisfies the SEC's obligation to award relief 'for the benefit of investors' and is consistent with the limitations of § 78u(d)(5)." 140 S. Ct. at 1948. If, as defendant suggests, *Liu* required the SEC to quantify investor losses, there would not have been any "open question" left.

Nevertheless, while the specifics of a distribution plan are not required at this stage, on February 7 the Commission intends to offer testimony from a witness from its Division of Economic Risk and Analysis, to explain the Commission's distribution process generally and that a distribution is feasible in this case. Consistent with that process, the SEC's proposed order requires the Commission to hold all funds paid by Defendants "until further order of the Court," and provides that the SEC "may propose a plan to distribute [funds] subject to the Court's approval." Thus, the Court will have the ability to supervise the distribution of these funds and, consistent with *Liu*, ensure that disgorged funds are returned to the most direct victims of the violation. This is all that is required to enter an order of disgorgement at this stage. *See Blackburn*, 2020 WL 10787527, at *4 (approving SEC's proposal "to act as trustee of any

5

funds recovered from Defendants and . . . to do so under the Court's supervision, only disbursing funds when approved by court order").

### C. Sargent Should Disgorge The Net Profits From His Unregistered Sales

In Section 5 cases involving unregistered sales of stock on the public markets, defendant's profits from those sales is a reasonable approximation of his unjust enrichment. *See, e.g.*, *SEC v. Zenergy Int'l, Inc.*, 2016 WL 5080423, at *5 (N.D. Ill. Sept. 20, 2016); *SEC v. Luna*, 2014 WL 2960451, at *7-10 (D. Nev. June 27, 2014); *Sierra*, 608 F. Supp. 2d at 969-70.

On February 7, the Commission will call a summary witness to introduce Sargent's net profits from his Section 5 violations. This evidence will show that, as agreed in the parties' pretrial memorandum (Dkt. 181 at 21), Sargent sold PixarBio stock between November 3, 2016, and January 18, 2017, for gross proceeds of $630,979. Sargent's legitimate expenses specifically associated with those sales were his costs of making the trades plus the cost to acquire the shares themselves, for a total of $23,707. And, after deducting those expenses, Sargent should be ordered to disgorge the net profits from his unregistered sales, or $607,272.

### D. Sargent Should be Ordered to Pay Prejudgment Interest

"Courts have recognized that an assessment of prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws." *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003) (citation omitted). Without an award of prejudgment interest, a securities law violator receives an "interest-free loan" on his unjust enrichment. *Id.* at 41.

The Court has broad discretion whether to grant prejudgment interest and what rate to use for calculation. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476-77 (2d Cir. 1996) (using IRS underpayment rate); *SEC v. Locke Capital Mgmt., Inc.*, 794 F. Supp. 2d 355, 369 (D.R.I.

2011) (same); 17 C.F.R. §201.600(b) (Commission Rules of Practice state that prejudgment interest is computed at IRS underpayment rate, compounded quarterly).  In SEC cases, courts typically calculate prejudgment interest using the rate established by the Internal Revenue Service for tax underpayment, which reasonably approximates the unjust benefit of a defendant's use of the money. *See First Jersey*, 101 F.3d at 1476; *SEC v. Druffner*, 517 F. Supp. 2d 502, 512-13 (D. Mass. 2007). Prejudgment interest is calculated for the entire period from the time of a defendant's unlawful gains to the entry of judgment. *See First Jersey,* 101 F.3d at 1477.

The SEC proposes prejudgment interest based on the IRS interest rate beginning on the date of each of Sargent's stock sales through the date of this Court's bench 7 trial (February 7, 2022). The Commission will present these calculations on February 7, which show that prejudgment interest on $607,272 is $145,127, for a total disgorgement of $752,399.

## Conclusion

For these reasons, the Commission requests that this Court order disgorgement in the amount of the proposed judgment submitted with this filing.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

/s/ Jonathan R. Allen
Eric. A. Forni (Mass. Bar No. 669685)
  Senior Trial Counsel
David J. D'Addio (Mass. Bar No. 665790)
  Senior Trial Counsel
Jonathan R. Allen (Mass. Bar No. 680729)
  Senior Enforcement Counsel
Boston Regional Office
33 Arch Street, 24th Floor
Dated:  February 1, 2022          Boston, MA  02110

7

## CERTIFICATE OF SERVICE

    I certify that this motion was filed electronically with the Court. The filing will be sent to the registered participants as identified on the Notice of Electronic Filing and may also be accessed through the Court's ECF system.

                                                           /s/ Jonathan R. Allen