UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CV-11416 (WGY) |
| ) | |
| HENRY B. SARGENT, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO FRCP 48(c)**
**WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Henry B. Sargent respectfully submits this motion for a new trial pursuant to Fed.

R. Civ. P. 48(c).[1]  As set forth herein, the Court committed reversible error in denying Mr. Sargent's

request that the jury be polled, and the only remedy for that error is to order a new trial.

**ARGUMENT**

**I.    Denying Mr. Sargent's Motion to Poll the Jury was Reversible Error**

"After a verdict is returned but before the jury is discharged, the court **must** on a party's

request, or may on its own, poll the jurors individually."  Fed. R. Civ. P. 48(c) (emphasis added).  As

the Supreme Court explained more than a century before Rule 48(c) was adopted in 2009, the object

of the right to poll a jury "is to ascertain for a certainty that each of the jurors approves of the verdict

as returned; that no one has been coerced or induced to sign a verdict to which he does not fully

assent."  *Humphries c. District of Columbia*, 174 U.S. 190, 194 (1899).  "Individual polling helps to

_____

[1] Mr. Sargent respectfully reserves the right to brief separately his motion for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50, or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59, which motion was made on the record on April 4, 2022, and on which the Court directed briefing.

ensure unanimity by unmasking coercion and exploring the possibility that a juror may change her mind after leaving the jury room." *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 25 (1st Cir. 2014)

Over the century following the Supreme Court's decision in *Humphries*, a prevailing rule developed, in the criminal context, "that a failure to poll the jury after a timely request constitutes *per se* reversible error." *Id*. In 1944, that prevailing consensus was codified in Fed. R. Crim. P. 31(d), which was intended to restate existing law and practice concerning jury polling. *See* Fed. R. Crim. P. 31, Notes of Advisory Committee on Rules – 1944 (describing new subdivision (d) as "a restatement of existing law and practice"). Civil Rule 48(c) is drawn directly from Criminal Rule 31(d), with minor revisions to reflect the style of the Civil Rules. Fed. R. Civ. P. 48, Committee Notes of Rules – 2009 Amendment; *Ira Green*, 775 F.3d at 25.

Only one circuit—the Seventh Circuit—appears to have squarely addressed the question whether failure to follow the mandatory language of Civil Rule 48(c) is *per se* reversible error. In *Verser v. Barfield*, the Seventh Circuit reasoned that "the civil rule was self-consciously written to extend the right guaranteed by the criminal rule into the civil realm, and there is little reason to distinguish between the two contexts." *Verser v. Barfield*, 741 F.3d 734, 738 (7th Cir. 2013). For that reason, and because Criminal Rule 31(d) restated established law under which failing to poll the jury upon timely request is reversible error, the Seventh Circuit found the rule requiring a new trial upon violation of the jury poll right elucidated in Criminal Rule 31(d) to be equally and "fully applicable to its civil analogue," Civil Rule 48(c). *Id*. Accordingly, it explained, "a district court's refusal, or even neglect, to conduct a jury poll upon a timely request is ground for a new trial" even in the civil context. *Id.*

The First Circuit, albeit in dicta, has recognized that "[t]he Seventh Circuit's position has much to commend it," and that common sense suggests that the civil and criminal "rules should be interpreted *in pari passu,*" and thus that denial of a motion to poll the jury, civil or criminal, is reversible error remediable only by a new trial. *Ira Green*, 775 F.3d at 25.

As the First Circuit explained, a "party's right to poll the jury is of basic importance" and protects other critically important rights, such as the right to a unanimous determination. *Id.* The Seventh Circuit's reasoning, under which a violation of Civil Rule 48(c) is *per se* reversible error—especially in the context of a regulatory enforcement action like this one, in which many of the underlying concerns are more similar to those that arise in the criminal context than to the those that ordinarily arise in civil litigation between private parties—should be applied here. Indeed, there is no federal court precedent, including in dicta, that suggests otherwise. Under the Seventh Circuit approach, supported if not explicitly adopted by the First Circuit, the Court's denial of Mr. Sargent's motion to poll the jury mandates a new trial.

Mr. Sargent is entitled to a new trial even if the Court were to apply a harmless-error analysis rather than adopt the Seventh Circuit's rule. There is substantial reason to believe that the jury failed or declined to follow the Court's instructions and that the verdict was not truly unanimous. These defects would likely have been exposed if the jury had been polled, as Mr. Sargent requested. As set forth in the accompanying Affidavit of Natasha Eskandar, several of the jurors spoke informally with Ms. Eskandar after the verdict was announced and prior to leaving the courthouse. Several expressed dissatisfaction with, and some specifically disagreed with, the verdict. One juror, for example, explicitly expressed disagreement with the verdict rendered, stating in substance that the verdict "did not go the way I wanted it to go" or the way that Juror "thought it should have gone." Another juror stated that he did not believe Mr. Sargent did anything wrong. That juror said that the

rules and laws are so broad that the Commission can obtain verdicts against "literally anybody" they pursue in court—an understanding of the law that is wholly inconsistent with the Court's instructions regarding fraudulent intent and materiality.  Two additional jurors indicated that the jury did not understand the instructions it was given, and that the jury instead applied legal guidance provided by two jurors who professed some degree of lay expertise in order to determine whether Mr. Sargent's conduct constituted a violation of the securities laws, apparently notwithstanding that the "violations" suggested by those jurors was outside the scope of the allegations at trial.

These comments by jurors indicate a possible lack of unanimity or assent and indicate that the jury failed to follow the Court's instructions, as does the fact that the jury reached a verdict very quickly on Monday after expressing that they were unable to reach a verdict at the end of the day on Friday. *Cf. Verser*, 741 F.3d at 242 (finding failure to poll jury prejudicial, in part because of the "jury's initial indication that it was deadlocked, [and] the speed with which it then returned a verdict").

## II.     <u>The Only Remedy is to Order a New Trial</u>

The Commission apparently believes that the Court can remedy the violation of Mr. Sargent's rights by recalling the jury in order to conduct a poll.  (*See* SEC's Emergency Motion to Recall Jury to Conduct Individual Polling, ECF No. 241; *see also* ECF No. 242 (text order denying motion to recall jury).)  The Commission is incorrect.  The jury has been at liberty for an extended period of time, during which time jury members have been permitted to research the case and the applicable law, to review media coverage concerning the verdict, and to discuss the facts and their opinions with others.  Under these circumstances, the jury, if recalled, could not accurately be polled—and the jurors certainly could not be directed to resume deliberations in the event that the poll reveals a defect in the previously-rendered verdict.

The case upon which the Commission relies for the proposition that the jury can be recalled is inapposite and actually supports Mr. Sargent's position that recalling the jury would be futile at best.  In *Dietz v. Bouldin*, 579 U.S. 40 (2016), the Supreme Court recognized that district courts have a limited inherent power to rescind a discharge order and recall a jury in a civil case, provided that doing so constitutes a "reasonable response to the problems and needs" confronting the court's fair administration of justice and is consistent with any express grant or limitation on the district court's power.  570 U.S. at 45-6.  As the *Dietz* Court explained, jurors are easily tainted after discharge because they are freed from instructions requiring them not to discuss the case and to avoid external information.  *Id.* at 49.  Thus, courts considering whether to recall a jury must consider the length of delay between discharge and recall, which can contribute not only to the taint caused by exposure to outside information but can also contribute to jurors' forgetting key facts, arguments, or instructions from the court, whether jurors have spoken with others about the case, and whether jurors have had access to outside information, among other considerations.  *Id.* at 49-51.  These considerations all counsel strongly against any suggestion that the jury can be recalled to be polled and to resume deliberations if the poll demonstrates that the verdict is flawed.

In short, the sole available remedy for the violation of Civil Rule 48(c) is to order a new trial.

## CONCLUSION

WHEREFORE, Henry B. Sargent respectfully requests that the Court order a new trial on the First and Second Causes of Action alleged in the Complaint against him.

Dated:   New York, New York
         April 6, 2022

MOSKOWITZ & BOOK, LLP

_____/s/ Peter R. Ginsberg_____
Peter R. Ginsberg (admitted *pro hac vice*)
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Peter R. Ginsberg, certify that on April 6, 2022, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

_____/s/ Peter R. Ginsberg_____