UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                        )
SECURITIES AND EXCHANGE COMMISSION,   )
                                                        )
                        Plaintiff,                      )
                                                        )
            v.                                          )          Case No. 19-CV-11416 (WGY)
                                                        )
HENRY B. SARGENT,                                       )
                                                        )
                        Defendant.                      )
_____ )

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A NEW
TRIAL PURSUANT TO FRCP 48(c)
<u>AND IN OPPOSITION TO SEC'S MOTION TO STRIKE</u>**

Defendant Henry B. Sargent respectfully submits this reply memorandum in support of his

motion for a new trial pursuant to Fed. R. Civ. P. 48(c) and in opposition to the SEC's motion to

strike the Affidavit of Natasha Eskandar.  As set forth herein and in Defendant's moving

memorandum, ECF No. 243 herein, the Court committed reversible error when it denied Mr.

Sargent's motion to poll the jury.  Mr. Sargent's motion was timely made, and the Court's denial

warrants a new trial even if Ms. Eskandar's affidavit is stricken or disregarded.  Moreover, Ms.

Eskandar's courthouse conversations with former jurors complied with the applicable rules of ethics

and did not implicate the concerns underlying the rule, or the prohibitions, set forth in *United States

v. Kepreos*, 759 F.2d 961 (1st Cir. 1985).

**ARGUMENT**

**I.     <u>Denial of Mr. Sargent's Motion to Poll the Jury was Reversible Error</u>**

The Commission relies heavily on *Wiseman v. Armstrong*, 989 A.2d 1027 (Conn. 2010), for

the proposition that Mr. Sargent's right to have the jury polled was fundamentally unimportant.  The

Commission ignores that *Wiseman* dealt with a Connecticut rule of practice that "fairly recently" created a right to polling that was not grounded in well-established Connecticut substantive law. *Wiseman*, 989 A.2d at 1039-40.  The *Wiseman* court distinguished Connecticut law from the laws of other jurisdictions, such as New York, in which jury polling had a "lengthy and strong common-law history," and in which a verdict cannot stand if a jury poll has been requested but not conducted.  *Id.* at 1039.

Federal courts, like the courts of New York and unlike those of Connecticut, have long recognized a right to jury polling.  As the Seventh Circuit has explained, in a case cited with approval by the First Circuit, the federal jury polling rule was well established long before the procedural rules were drafted.  *Verser v. Barfield*, 741 F.3d 734, 738 (7th Cir. 2013).  The *Wiseman* court's logic, which derived from the fact that the Connecticut right was "newly created" by a procedural rule, is therefore inapplicable to the federal right at issue here.  To the contrary, the right to a unanimous jury in a civil case has been fundamental since the foundation of the United States.  The right to jury polling, too, is longstanding in federal courts.  As argued in Defendant's opening brief, Criminal Rule 31(d) restated the practice that preexisted the establishment of the rules, and Civil Rule 48(c) is drawn directly from the criminal rule without modification or limitation.  Thus, the federal right to jury polling—unlike the Connecticut practice established by rule—has long been established as a matter of substantive law and is a necessary protection of the right to jury unanimity. It should be rigorously upheld.

## II.   <u>Mr. Sargent's Motion for Polling Was Timely</u>

The Commission argues disingenuously that Mr. Sargent's motion that the jury be polled was untimely.  This argument is belied by the record.  Mr. Sargent made his motion as immediately as practicable after the Court hearkened the jury, and before the jury was discharged, exactly as Rule 48(c) contemplates.

2

Mr. Ginsberg rose to his feet to make the motion immediately when the jury foreperson delivered the verdict, and the oral motion was heard before the jury was excused from the courtroom or discharged from their duties.  Indeed, the jurors were still sitting when Mr. Ginsberg asked that they be polled. That Mr. Ginsberg waited for the Court to acknowledge him before speaking, rather than interrupt the Court's colloquy with the jury, does not render the motion untimely—and the record clearly reflects that the motion was made, and denied, before the jury was excused or permitted to leave the jury box.  Indeed, even the Commission acknowledges that the jury could have been recalled to the jury box to be polled if necessary—but no such action was required, since they were still present when Defendant requested polling.  The Commission's argument that the motion to poll the jury was untimely should therefore be rejected.

III.   **Ms. Eskandar's Conversations with Former Jurors Were Not Inappropriate**

The Commission argues that Ms. Eskandar's conversations with former jurors were forbidden by the rule set forth in *United States v. Kepreos*, 759 F.2d 961.  It is respectfully submitted that those conversations were not contrary to the considerations underlying the rule in that case, that they were otherwise consistent with counsel's ethical requirements, and that any violation of the *Kepreos* rule was unintentional and in good faith.

The Commission argues that *Kepreos* creates a *per se* rule that any form of unsupervised conversation with a former juror is inappropriate.  That is not correct.  *Kepreos* dealt with a circumstance very different than the one presented here.  In that case, after a mistrial, the prosecutor contacted at least one juror and conducted an extensive interview for the purpose of identifying the specific jurors who had not been persuaded of the defendant's guilt at trial and learning the specific reasons those jurors had been unwilling to convict.  Without disclosing the fact of those interviews or the information he had thereby obtained, and potentially in violation of the defendant's substantive Constitutional rights, the prosecutor leveraged the information he obtained from that

3

juror or jurors to gain a tactical advantage at retrial of the case. *Id.* at 967. On appeal, the *Kepreos* court was concerned that unfair conduct like that engaged in by the prosecutor in that case "could easily lead to… harassment [of jurors], to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as unbalanced trial results depending unduly on the relative resources of the parties." *Id.* Accordingly, it established a prohibition on "the post-verdict interview of jurors" in order to deter "future incidents like the one described above." *Id.*

Ms. Eskandar's conversations with several former jurors were not "interviews" like the one described in *Kepreos* and they could not have given rise to the evils the *Kepreos* rule was intended to avert. To the contrary, the intent of the conversations Ms. Eskandar had was to glean insight into the performance of counsel, in order to refine counsel's style of presentation in advance of other trials in other cases. The conversations were not intended to elicit information for use in future proceedings in this case, and they were not intended to create any unfair tactical advantage in this litigation, to challenge the integrity of the verdict herein, or to interfere with jurors' willingness to serve in the future. The fact that the information gleaned from those conversations later was used to explicate the possibility that the verdict was not unanimous—and that failure to poll the jury would require a new trial even if the appropriate standard of review were clear error—does not retroactively convert Ms. Eskandar's innocent conversations into an improper inquiry into the deliberative process in order to create an argument for a new trial. Counsel believed in good faith that Ms. Eskandar could engage in these brief and informal conversations, consistent with the Court's admonition that the

parties would not "contact" jurors[1] and that jurors were free to say anything at all about the case after being released to anyone they chose, subject only to the proviso that they were urged not to speak about what had occurred during deliberations.

As set forth in the clarifying affidavit submitted herewith, Ms. Eskandar had brief conversations with several former jurors after they had been released from the restrictions on their First Amendment rights that were necessitated by trial and after those jurors were free to speak about their experiences.

Each conversation was limited to no more than two or three minutes. At the beginning of each conversation, Ms. Eskandar expressly stated that the juror had no obligation to speak to her—and indeed one juror chose not to speak—but that she would welcome any thoughts the juror wished to share about what he or she had found effective or ineffective with regard to counsel's presentation of evidence. Ms. Eskandar did not inquire about the substance of deliberations, or even about whether the verdict was unanimous. Instead, her conversational prompt was limited to the question of what aspects of the defense presentation each individual juror found to have been effective or ineffective. Nor—unlike what occurred in each of the cases the Commission cites—did Ms. Eskandar contact jurors using any of the information that was provided during *voir dire* or otherwise take any action that would even arguably impinge on any juror's privacy interests. Indeed, she

---

[1] Counsel understood the term "contact," as used by the Court, to refer to using the names and addresses provided during *voir dire* to contact jurors outside the courthouse, as apparently occurred in *Kepreos, Cool Light Co. v. GTE Prods. Corp*, 832 F. Supp. 449 (D.Mass. 1993), and *Bushkin Assoc's Inc. v. Raytheon Co*, 121 F.R.D. 5 (D.Mass.1988), the cases cited by the SEC. Informal, polite, and respectful communications, as described in Ms. Eskandar's supplemental affidavit, are far removed from the practice of improperly "contacting" jurors using private information in order to obtain an unfair advantage, as occurred in the cases cited by the Commission. Indeed, the Commission does not cite a single case that involved informal courthouse conversation, in contrast to cases involving parties who sought out and contacted jurors using information provided during *voir dire* and once the jurors had returned to their homes. In the latter circumstance, there was no way to avoid the initial intrusion; in the instant situation, the communications were entirely voluntary and open from the beginning.

spoke only to those jurors whom she encountered near the courthouse cafeteria in the minutes after the jury was dismissed.

Counsel believed in good faith that such conversations did not violate the rule of *Kepreos* and that they were consistent with counsel's ethical obligations. *See, e.g.*, Am. Bar Ass'n Ethical Consideration 7-29 ("After the trial, communication by a lawyer with jurors is permitted so long as he refrains from asking questions or making comments that tend to harass or embarrass the juror or to influence actions of the juror in future cases"); ABA Model Rule of Professional Conduct 3.5.

## IV.   The Record Otherwise Suggests a Lack of Unanimity

Finally, even if the Court disregards Ms. Eskandar's affidavit, there is nevertheless significant reason to doubt whether the verdict was meaningfully unanimous. When the jury was hearkened, for example, several jurors did not audibly respond or looked down or away from the Court when responding—which circumstance led counsel to request that the jury be polled. Moreover, as Mr. Sargent argued in the brief docketed at ECF No. 264, the verdict sheet was defective, in that Question 1 was at best unclear as to what statutes and conduct it was intended to cover. The jury's questions immediately before the verdict—which the Court declined to answer substantively—indicated a clear lack of understanding of what law the jury was supposed to be applying on each cause of action, making it even less likely that the jury came to a unanimous agreement as to each cause of action and each question set forth on the verdict sheet.

Moreover, contrary to the Commission's argument, Mr. Sargent did not waive or fail to preserve this argument. After the Court disseminated its proposed verdict sheet, Mr. Sargent filed proposed amendments intended to clarify the questions posed and the requirement of unanimity. (ECF No. 238.) That the Court chose not to hear argument or to correct the defects that led Mr. Sargent to propose amendments does not constitute a waiver by Mr. Sargent of his right to a unanimous jury verdict.

6

**CONCLUSION**

WHEREFORE, Henry B. Sargent respectfully requests that the Court order a new trial on the

First and Second Causes of Action alleged in the Complaint against him.

Dated:     New York, New York
           April 19, 2022

                              MOSKOWITZ & BOOK, LLP


                              _____/s/ Peter R. Ginsberg_____
                              Peter R. Ginsberg (admitted *pro hac vice*)
                              345 Seventh Avenue, 21st Floor
                              New York, New York 10001
                              (212) 221-7999
                              *Attorneys for Defendant*


**CERTIFICATE OF SERVICE**

I, Peter R. Ginsberg, certify that on April 19, 2022, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

                              _____/s/ Peter R. Ginsberg_____