UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11416-RGS

SECURITIES AND EXCHANGE COMMISSION

v.

HENRY B. SARGENT

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR A NEW TRIAL AND
PLAINTIFF'S MOTION TO STRIKE ESKANDAR AFFIDAVIT

June 2, 2022

STEARNS, D.J.

On April 4, 2022, a jury returned a unanimous verdict against defendant Henry Sargent, finding him liable on multiple fraud claims brought by the Securities and Exchange Commission (the Commission). After the verdict had been recorded, but before the jury had been formally discharged, Sargent's counsel requested that the presiding judge, the Honorable William Young, poll the jury. Judge Young denied the request. At a later post-verdict hearing, Judge Young acknowledged that his refusal to poll the jury violated the letter of Federal Rule of Civil Procedure 48(c).

He partially recused himself and ordered the polling/new trial motion be randomly drawn to a different judge for consideration. After a careful review of the trial record and the parties' briefs, I conclude that Judge Young's refusal to poll the jury constituted reversible error. Accordingly, Sargent's motion for a new trial will be allowed.

## BACKGROUND

In June of 2019, the Commission filed suit against Sargent, alleging that he and several coventurers had engaged in "a fraudulent and deceptive scheme to disguise public stock sales by corporate affiliates that should have been registered with the Commission." Compl. (Dkt # 1) ¶ 1. After discovery, the case proceeded to a ten-day jury trial before Judge Young, beginning on March 22, 2022, and culminating with the jury's verdict on April 4, 2022.

On April 4, 2022, the foreperson announced in open court that the jury had reached a unanimous verdict. Jury Verdict (Dkt # 256); Verdict Tr. (Dkt # 265) at 8:2-4. After reading the jury's verdict, the courtroom clerk addressed the foreperson and the other members of the jury to confirm that the verdict had been properly recorded:

> [THE CLERK:] So say you Madam Forelady, is that your verdict?
>
> THE FOREPERSON: Yes.
>
> THE CLERK: So say you members of the jury?

  THE JURY: (In unison.) Yes.

Verdict Tr. at 9:5-8. Judge Young then thanked the jury for their service and told them that they "may retire." *Id.* at 10:11. Immediately thereafter, before the jury had left the courtroom, Sargent's counsel asked that the jurors be polled. *Id.* at 10:13. Judge Young responded, "Denied. They may be excused." *Id.* at 10:14-15.

  Two days later, Sargent filed a motion for a new trial, arguing that the refusal to poll the jury constituted *per se* reversible error. *See* Dkt # 243. On April 21, 2022, Judge Young held a hearing on the motion. *See* Hr'g Tr. (Dkt # 273). At the hearing, Judge Young conceded that he had erred in declining to poll the jury, explaining that he "simply did not know the rule," adding further that Rule 48(c) was only adopted in 2009 and that no litigant had asked him since to poll a jury in a civil case. *Id.* at 4:17-5:1.

  Judge Young then partially recused himself "from the determination of the motion [for a new trial] as it rests" on his alleged deviation from the mandatory language of the Rule, and that in the interests of impartiality the issue would be better decided by another judge. *Id.* at 8:15-18, 9:10-12; *see also* Order for Partial Recusal (Dkt # 269). By random designation, the issue was assigned to me. *See* Dkt # 277.

3

## DISCUSSION

"In the criminal context, the prevailing rule is that a failure to poll the jury after a timely request constitutes *per se* reversible error." *Ira Green, Inc. v. Mil. Sales & Serv. Co.*, 775 F.3d 12, 25 (1st Cir. 2014). This rule was adopted in 1944 as Rule 31(d) of the modern Federal Rules of Criminal Procedure as a "restatement of existing law and practice." Fed. R. Crim. P. 31(d) advisory committee note. The Rule ratifies the importance of "ascertain[ing] for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent." *Humphries v. Dist. of Columbia*, 174 U.S. 190, 194 (1899).

"The law is much less clear in the civil context." *Ira Green*, 775 F.3d at 25. In 2009, "Federal Rule of Civil Procedure 48 was amended by adding subsection (c) to make a jury poll mandatory upon timeous request." *Id.* at 24. "The new provision was 'drawn from Criminal Rule 31(d) with minor revisions to reflect Civil Rules Style and the parties' opportunity to stipulate to a nonunanimous verdict.'" *Id.* at 24-25, quoting Fed. R. Civ. P. 48(c) advisory committee note to 2009 amend. In its current form, Federal Rule of Civil Procedure 48(c) states: "After a verdict is returned but before the jury

4

is discharged, the court *must* on a party's request, or may on its own, poll the jurors individually" (emphasis added).

The Seventh Circuit, in *Verser v. Barfield*, 741 F.3d 734 (7th Cir. 2013), was the first (and, to date, the only) federal appeals court to opine on whether a judge's denial of a litigant's timely request to poll a jury in a civil trial constituted *per se* reversible error. In determining that "decisions applying Criminal Rule 31(d) are fully applicable to its civil analogue," the Seventh Circuit reasoned that "[t]he civil rule was self-consciously written to extend the right guaranteed by the criminal rule into the civil realm, and there is little reason to distinguish between the two contexts." *Id*. at 738. In *dictum*, the *Verser* panel wrote: "There is no doubt that a district court's refusal, or even neglect, to conduct a jury poll upon a timely request is ground for a new trial." *Id*.

In *Ira Green*, the First Circuit laid out the Seventh Circuit's reasoning in *Verser*. *Id*. at 25. Acknowledging that "[t]he criminal and civil rules on jury polling are now virtually identical," the First Circuit posited that "[c]ommon sense suggests that these rules should be interpreted *in pari passu*." *Id*. However, it stopped short of adopting the Seventh Circuit's holding, observing that the issue is "open to legitimate question," and noting that "[m]ore than one state court, interpreting similar parallel mandatory

5

jury-polling rules, has concluded that a violation of the right to a jury poll engenders automatic reversal in criminal cases but not in civil cases." *Id.*, citing *Wiseman v. Armstrong*, 295 Conn. 94, 117-118 (2010) (collecting cases). In the end, the First Circuit left this "gray area" unresolved, holding that the plaintiff in *Ira Green* had waived his objection to the judge's refusal to poll the jury by failing to renew the request in a timely manner.[1] *Id.* at 25-26; *see also Simmons v. Napier*, 626 F. App'x 129, 142 (6th Cir. 2015) (similarly avoiding a resolution of the civil jury-poll issue by finding that "the circumstances of [the] case are nearly identical to those at issue in *Ira Green*").

In the absence of any firm direction on the proper result, I am left in the uncomfortable position of predicting how the First Circuit would resolve the issue if squarely presented (as it is here). This is not, however, a case of anthropomancy. It is difficult to read the *Ira Green* panel's positive

---

[1] Here, despite the Commission's argument to the contrary, Sargent's request to poll the jury was timely. *See* Hr'g Tr. at 4:10-11 ("[THE COURT:] I consider the request timely, he had not waived it by anything I had said."). Although the request came after Judge Young told the jurors that they "may retire," Verdict Tr. at 10:11, Sargent's counsel asked to poll the jury at the earliest possible moment, immediately after Judge Young finished thanking the jury and before the jury had left the courtroom, *see id.* at 10:13-16. Consequently, I conclude – as did Judge Young – that the jury was not yet "discharged" for purposes of Fed. R. Civ. P. 48(c).

treatment of *Verser* (albeit *dicta*) as suggesting anything but a blaze marker pointing to the First Circuit's predilection, particularly now, that after the 2009 adoption of Rule 48(c), "there is little reason to distinguish between the two contexts." *Verser*, 741 F.3d at 738. And because of significant differences between civil practice in the state as opposed to the federal courts, an attempt to ground a contrary result on state rules offers little promise.[2]

At the same time, I am acutely aware of the fact that the stakes at play are considerable, especially given the investment of judicial resources in a

---

[2] "Unless the parties stipulate otherwise," federal civil trials require a unanimous verdict. Fed. R. Civ. P. 48(b). By contrast, many state courts require unanimity in criminal jury verdicts but not in civil jury verdicts. *See, e.g.*, *Finstad v. W.R. Grace & Co.*, 301 Mont. 240, 244-245 (2000) (two-thirds of jurors must agree to reach a verdict in a civil trial in Montana); *Stoner v. Williams*, 46 Cal. App. 4th 986, 1001 (1996) ("In civil cases, only three-fourths of jurors need agree on a verdict in California."); *Walton Const. Co. v. MGM Masonry, Inc.*, 199 S.W.3d 799, 804 (Mo. Ct. App. 2006) (same, in Missouri); *Jamgochian v. Dierker*, 425 Mass. 565, 567 (1997) (five-sixths of jurors must agree to reach a verdict in a civil trial in Massachusetts); *Mahoney v. Podolnick*, 168 N.J. 202, 215-216 (2001) (same, in New Jersey); *Schabe v. Hampton Bays Union Free Sch. Dist.*, 480 N.Y.S.2d 328, 333 (N.Y. App. Div. 1984) (same, in New York); *Fritz v. Wright*, 589 Pa. 219, 226 (2006) (same, in Pennsylvania); *Sherill v. Estate of Plumley*, 514 S.W.2d 286, 297 (Tex. Civ. App. 1974) (same, in Texas); *Naumburg v. Wagner*, 81 N.M. 242, 243 (1970) (ten jurors must agree to reach a verdict in a civil trial in New Mexico). *But see Wiseman*, 295 Conn. at 117 (civil jury verdicts must be unanimous in Connecticut). Thus, it stands to reason that the interest of these state jurisdictions in "ensur[ing] unanimity" in civil jury trials is not as vital an interest as it is the federal civil court. *Ira Green*, 775 F.3d at 25.

ten-day jury trial and the absence (on the record at least) of any suggestion of hesitancy about the verdict on the part of any juror in the courtroom. I also recognize that *Ira Green*, while indicative, is not definitive of the First Circuit's position. Consequently, I am "of the opinion that [this] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [this] order may materially advance the ultimate termination of [this] litigation." 28 U.S.C. § 1292(b). Accordingly, I will allow this order to be appealed immediately to the First Circuit, if, in its discretion, it permits an interlocutory appeal to be taken.

**ORDER**

For the foregoing reasons, Sargent's motion for a new trial is ALLOWED. However, pursuant to 28 U.S.C. § 1292, the Commission may apply to the First Circuit to take an interlocutory appeal of this order, so long as its application is made to the Circuit within ten days of its entry. The Commission's motion to strike the Eskandar affidavit is DENIED AS MOOT.[3]

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[3] I need not consider the Commission's motion to strike the affidavit of Natasha Eskandar – a paralegal assisting Sargent's defense – on the grounds that her attempt to conduct post-verdict interviews of jurors violated the First Circuit's circumscription of such solicitations. *See United States v. Kepreos*, 759 F.2d 961 (1st Cir. 1985). While I do not approve of the ill-advised juror sortie, the information recounted in the Eskander affidavit has no relevance to a review for categorical error.

9